UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARC AND TYRONE STEPHENS,** | Civ. No. 2:14-05362 (WJM) |
| Plaintiffs, | |
| v. | **OPINION** |
| **CITY OF ENGLEWOOD,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Proceeding *pro se*, Plaintiffs Marc and Tyrone Stephens have filed a 20-count complaint against an attorney, the City of Englewood, the Englewood Police Department, and a number of individual police officers. Those Defendants have all moved for summary judgment. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motions for summary judgment are **GRANTED**.

**I.   BACKGROUND**

Tyrone Stephens, and his older brother, Marc Stephens, bring this action against numerous Defendants.[1] For the purposes of this opinion, the action can divided into two parts: (1) legal malpractice claims against Defendant Nina Remson, and (2) various claims against the City of Englewood, the Englewood Police Department, and some of Englewood's police officers. Unless otherwise noted, the following facts are undisputed.

A.  Nina Remson's Representation of Tyrone

In 2012, juvenile complaints were filed against Tyrone in the Superior Court of New Jersey, Bergen County. Remson Decl. at ¶¶ 3-7. In March 2012, Remson and her law firm, Nina C. Remson Attorney at Law, LLC, were retained to represent Tyrone, who was then a minor, in connection with those complaints. *Id.* Marc paid a portion of the retainer

---

[1] For the sake of brevity and the avoidance of confusion, the Court will refer to Plaintiffs by their first names only.

1

fees required for Remson's services. In June 2012, Plaintiffs' mother, Viola, retained Remson to represent Tyrone in a separate matter. *Id*. at ¶ 8.

According to Remson, communications between her and Marc became unworkable, which culminated in Marc informing her that he was taking over the representation of Tyrone. Remson further states that her difficulties in communicating with Tyrone caused her to file a motion to be relieved as counsel, which was unsuccessful. In connection with her motion, Remson also turned over her entire case file on Tyrone to Marc and Viola.

According to Plaintiffs, Marc entered into an agreement with Remson providing that Remson would not have Tyrone take a plea deal in connection with the juvenile complaints. *Complt*. at ¶ 131. Marc further contends that Remson violated this agreement by having Marc take a plea agreement with the Bergen County Prosecutor's Office ("BCPO"). *Id*. Remson admits that she appeared in court with Tyrone and Viola and that Tyrone plead guilty in accordance with the plea offer. Remson Decl. at ¶¶ 14-16.

Plaintiffs then filed this lawsuit against Remson on August 26, 2014. The complaint as against Remson alleges legal malpractice, breach of contract, and ineffective assistance of counsel. *Complt*. at ¶¶ 124-138. On October 22, 2014 Marc emailed discovery requests to Remson's attorneys. Remson Statement of Material Facts (Remson SUMF) at ¶13. Four days later, on October 26, 2014, Remson filed her answer to Plaintiffs' complaint. ECF No. 16. The answer's Nineteenth Separate Defense contends that "Plaintiffs' claims should be dismissed for failure to timely secure and serve an appropriate Affidavit of Merit." Remson Answer at 31. Remson has yet to receive an Affidavit of Merit from Plaintiffs. Remson SUMF at ¶19.

B. The October 31 Incident

Detectives Desmond Singh, Marc McDonald, Nathaniel Kinlaw, and Detective Lieutenant Claudia Cubillos are police officers employed by the Englewood Police Department. Detective Santiago Incle, Jr. formerly served as a police officer for Englewood. Englewood Statement of Material Facts ("Englewood SUMF") at ¶¶1-5. The Court will refer to those individuals collectively as, "the Englewood Detectives." On October 31 at or around 10:12 pm, three individuals, Kristian Perdomo, Santiago Cortes, and Jeisson Duque were assaulted outside a 7-Eleven. The Court will refer to this event as "the October 31 Incident." The next day, an Englewood Police Officer (who is not named as a Defendant) was dispatched to the Englewood Hospital and Medical Center emergency room to speak with the victims of the assault. *Id*. at ¶12. According to the officer's report, Perdomo stated that he and the two other victims were approached by a group of 20-30 teenage black males who demanded the victims' possessions. When Duque refused, the group kicked, punched, and stomped him. When Perdomo and Cortes attempted to intervene on Duque's behalf, they were also attacked. The attackers then fled in various directions. Witness bystanders contacted the police, and the victims were treated for

various injuries. *Id*. at ¶¶14-15. This resulted in the Englewood Police Department launching an investigation into who was responsible for the October 31 Incident.

In line with its investigation, Detectives McDonald and Singh reported to the hospital to meet with the victims. *Id*. at ¶19. Duque testified that he could not identify any of the attackers, but that one of them was on a bicycle and was wearing a mask. *Id*. at 25. Perdomo provided similar testimony, but also noted that "Derek" – a boy whom Perdomo recognized from the soccer team – was one of the attackers. *Id*. at ¶27.

Detectives Singh and McDonald also interviewed Cortes' sister, Natalia. According to a police report, Natalia identified the photos of the attackers from a photo ID book. *Id*. at 31-33. Specifically, Natalia identified the photos of the following three individuals: Justin Evans, Derrick Gaddy, and Tyrone Stephens. *Id*. at. ¶32.

On November 5, 2012, Detective McDonald received an anonymous tip that Kirk McIntosh Jr. and Jahquan Graham were involved in the October 31 Incident. After being read his Miranda rights and swearing to tell the truth, McIntosh admitted that he was involved in the October 31 Incident, but made no mention of Tyrone. *Id*. at ¶41; *see also* Stephens' Resp. to Englewood SUMF at ¶42. Shortly thereafter, McIntosh was taken into custody and charged with several offenses. *Id*.

That same day, Detectives McDonald and Singh brought in Justin Evans – who Natalia Cortes identified from a photo ID book – for questioning. *Id* at ¶43.[2] After being Mirandized, Evans ultimately admitted under oath to striking one of the victims during the October 31 Incident. He also testified that Tyrone was involved in the attack. Specifically, Evans testified that Tyrone was the architect of the attack and was the first to start punching the victims at the scene. *Id*. at ¶47.

On November 8, 2012, Detectives McDonald and Singh interviewed Tyrone at the Englewood Police Station, all while in the presence of Marc. After being Mirandized, Tyrone denied any involvement in the October 31 Incident. *Id*. at 51. Marc claimed that Tyrone was home at the time of the October 31 Incident, and Tyrone agreed with his brother's recollection. *Id*. at ¶¶53-54. After the interview, Tyrone was taken into custody and charged with several offenses. *Id*. at 57.

According to a Supplementary Investigation Report prepared by Detective Kinlaw (hereinafter "the Kinlaw Report"), on November 9, 2012, Tyrone had a conversation with Jaquan Graham, who was also charged in connection with the October 31 Incident, from a nearby holding cell. According to the Kinlaw Report, when Graham expressed confusion as to why he was in a holding cell, Tyrone stated: "I know why we are here, that f**cking rat Derek told." Englewood SUMF at ¶¶62-63 (citing Pakrul Decl., Ex. 18, Kinlaw Report, prepared November 9, 2012). Tyrone denies ever having this conversation. *Id*. at ¶65.

---

[2] When questioned by the police, McIntosh also identified Evans as one of the attackers. Pakrul Decl., Ex. 9, McIntosh Transcript, 31:7-18.

After arresting Tyrone, the Englewood Police Department continued its investigation into the October 31 Incident. With respect to the investigation into Tyrone, suspect Jacquire Roberts told police that he was in a car with Tyrone when the October 31 Incident took place. Englewood SUMF at ¶¶74-76. According to the Englewood Detectives, Roberts' recollection conflicted with the alibi given by Marc, which stated that Tyrone was home at the time of the October 31 Incident. *Id.* After interviewing other suspects and witnesses, the Englewood Police Department administratively closed the case and turned it over to the BCPO. *Id.* at ¶81.

In December 2012, Detective McDonald filed criminal complaints against Tyrone for first degree robbery, second degree aggravated assault, and fourth degree riot. Englewood SUMF at ¶82. At a probable cause hearing held before the Honorable Gary N. Wilcox, Detective McDonald testified regarding the investigation into Tyrone. He specifically noted that Natalia Cortes identified Tyrone in a photo ID book, that co-Defendant Justin Evans named Tyrone as the architect behind the attack, and that Tyrone made incriminating statements to another suspect in a holding cell. *Id.* at ¶¶83-86.

Tyrone's attorney, Jordan Comet, then presented a defense on behalf of his client. He called Tyron Roy, who testified that on the night of the October 31 Incident, Tyrone Stephens joined him for a car ride, accompanied him to McDonalds, and then was dropped off at home. *Id.* at ¶88. Tyrone's attorney also pointed out that the alleged identification made by Natalia Cortes was nowhere to be heard on the audio recording of her interview. Pakrul Decl., Ex. 26, Transcript of 12/20/12 Probable Cause Hearing at 22:23-23:1. Throughout the course of the hearing, Tyrone's attorney attempted to poke other holes in the prosecution's case. *Id.* at 23:1-56:21.

After hearing the evidence, Judge Wilcox noted that the prosecution may have some difficulty proving that Tyrone was guilty beyond a reasonable doubt. However, he noted that a probable cause hearing does not involve such a stringent burden of proof, and that the State demonstrated a well-grounded suspicion that Tyrone committed the alleged offense. *Id.* at 96:16-97:4.

On February 26, 2013, Judge Wilcox held another hearing to, among other things, hear additional evidence from Tyrone challenging the State's case against him. Englewood SUMF at 90. Of particular note was the testimony of Natalia Cortes, which was at times confusing and inconsistent. Ms. Cortes first seemed to testify that she recalled identifying Tyrone as one of the persons responsible for the October 31 Incident. However, just minutes later she testified that she did not identify Tyrone Stephens whatsoever. Englewood SUMF at ¶¶91-95. Notwithstanding Ms. Cortes' testimony, Judge Wilcox concluded that there was probable cause for the issuance of a criminal complaint against Tyrone. Englewood SUMF at ¶¶97-99. A Grand Jury then indicted Tyrone later that year. *Id.* at ¶100.

After Tyrone was indicted, his co-defendant, Justin Evans, took a plea deal in which he plead guilty to the charges arising out of the October 31 Incident. *Id.* at ¶101. Evans admitted to the charged offenses and stated that he falsely implicated Tyrone as an

accomplice.  Evans believed that Tyrone implicated him as a person involved in charged offenses, so he decided to falsely accuse Tyrone as revenge.  *Id.* at ¶¶101-14.  Defendants point out, however, that Evans never claimed that the police forced him to implicate Tyrone.  *Id* at. ¶105.  After Evans recanted his accusations, prosecutors dismissed the indictment against Tyrone, who was released from jail shortly thereafter.  *Id.* at ¶107.

Tyrone's claims in connection with this incident are against the Englewood Detectives, the Englewood Police Department, and the City of Englewood.  Like Remson, all of those Defendants have moved for summary judgment.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  *Id.*  The opposing party must do more than just rest upon mere allegations, general denials, or vague statements.  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  *Anderson*, 477 U.S. at 256–57.

## III.  CLAIMS AGAINST NINA REMSON

Remson is entitled to summary judgment because Plaintiffs failed to comply with New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A-27.  New Jersey's affidavit of merit statute requires that a plaintiff show "that the complaint is meritorious by obtaining an affidavit from an appropriate licensed expert attesting to the 'reasonable probability' of professional negligence."  *Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 149-50 (2003) (citing N.J.S.A. 2A:53A-27).  The plaintiff must provide the affidavit within sixty days of the filing of the answer or, for good cause shown, within an additional sixty-day period.  *Id.* at 150.  Where a plaintiff fails to serve the affidavit within 120 days of the filing

5

of the answer, the complaint is subject to dismissal with prejudice. *Id.* Regardless of how a claim is labeled, it will be subject to the affidavit of merit requirement if it is based on the allegation that an attorney deviated from the acceptable standard of care. *See New Hampshire Ins. Co. v. Diller*, 678 F. Supp.2d 288 (D.N.J. 2009); *Nagim v. N.J. Transit*, 369 Super 103, 116 (N.J. Super. Ct. Law. Div. 2003).

Plaintiffs admit that they never served Remson with an affidavit of merit. However, they put forth a number of arguments for why they were not required to comply with the affidavit of merit statute. The Court rejects these arguments and will enter summary judgment in Remson's favor.

Plaintiffs first argue that the statute does not apply because the Court did not hold a *Ferreira* conference. However, the failure to hold a *Ferreira* conference does not toll the affidavit of merit statute's 120-day deadline. *Paragon Contractors, Inc. v. Peachtree Condominium Ass'n*, 202 N.J. 415, 425-26 (2010). Plaintiffs also contend that Remson failed to provide them with the discovery needed to complete an affidavit of merit. Therefore, Plaintiffs argue that N.J.S.A. § 2A:53A-28 allows them to file a sworn statement in lieu of an affidavit of merit. In order to avail themselves of that exception to the requirement, however, Plaintiffs were required to notify Remson that they needed certain information for the preparation of an affidavit of merit. *Scaffidi v. Horvitz*, 343 N.J. Super 552, 554 (N.J. Super. Ct. App. Div. 2001). The record shows that Plaintiffs did not provide Remson with any notification of that sort. Therefore, Plaintiffs' argument is without merit. Moreover, the record shows that Plaintiffs were in possession of Remson's entire case file on Tyrone at the time they filed this lawsuit. Plaintiffs have not explained why that information was insufficient to comply with the statute, especially considering that the affidavit of merit requirement "is not concerned with the ability to prove the allegation contained in the complaint…." *See Hubbard v. Reed*, 168 N.J. 387, 394 (2001). For those reasons, the Court also rejects Plaintiffs' argument that Remson is equitably estopped from raising an affidavit of merit defense. *Cf. Stoecker v. Echevarria*, 408 N.J. Super. 597 (N.J. Super. Ct. App. Div. 2009).

Plaintiffs further argue that under the "common knowledge exception," the affidavit of merit requirement does not apply in this case. The common knowledge exception provides that an affidavit of merit is not required where the alleged careless acts are "quite obvious" so that "'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" *Palanque v. Lambert-Woolley*, 168 N.J. 398, 406 (2001) (citing *Hubbard*, 168 N.J. at 394). This is not one of those cases. Plaintiffs' claims implicate a thicket of complicated legal issues surrounding Remson's relationship with her client. While Remson apparently believed that taking a plea deal would be in Tyrone's best interest, Marc adamantly contends that he instructed her to take the case to trial. Remson was therefore faced with a conundrum; she had to balance what she believed to be the best interests of her client, who at the time was a minor, with the

wishes of an older brother who paid a portion of the retainer fee and claimed to be Tyrone's guardian. *See Restatement (Third) of Law Governing Lawyers* §24A, cmt. b (in cases where interests of minor client conflict with wishes of legal guardian, attorney must exercise informed professional judgment).[3] Whether Remson acted negligently in this unique scenario is not the type of question that a lay person could answer without the benefit of specialized experts. Consequently, the common knowledge exception does not apply and summary judgment will be entered in Remson's favor.

## IV.   CLAIMS AGAINST THE ENGLEWOOD DETECTIVES

### A. 42 U.S.C. § 1983 Claims: False Arrest, "False Evidence," Malicious Prosecution, False Imprisonment, Conspiracy

Plaintiffs assert a number of different Section 1983 claims against the Englewood Detectives. First is Tyrone's Section 1983 claim accusing the Englewood Detectives of false arrest. In order to prevail on his false arrest claim, Tyrone must show that the Englewood Detectives arrested him without probable cause. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Indeed, "[t]he proper inquiry in a section 1983 claim based on false arrest … is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Id.* (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). While probable cause requires more than mere suspicion, it does not require the type of evidence needed to support a conviction. *See Reedy v. Evanson*, 615 F.3d at 197, 212 (3d Cir. 2010) (quotations and citations omitted). Probable cause to arrest exists where the arresting officer possesses sufficient knowledge to form a reasonable belief that the person being arrested is committing or has committed the charged offense. *Id.* (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). Put simply, the relevant inquiry is whether, after considering the totality of the circumstances, there was a "fair probability" that the arrestee committed the crime at issue. *Id.* (citing *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). *See also Illinois v. Gates*, 462 U.S. 213, 230 (1983).

Viewing the evidence in a light most favorable to the non-movants, the Court concludes that the Englewood Detectives had probable cause to arrest Tyrone. The Englewood Detectives had four main pieces of evidence implicating Tyrone in the October 31 Incident: (1) the alleged photo identification by Natalia Cortes; (2) the statements made by Justin Evans; (3) inconsistencies in testimony regarding Tyrone's alibi; and (4) the statement Tyrone allegedly made to Jaquan Graham while in a holding cell. In opposing summary judgment, Tyrone focuses on the fact that the alleged photo identification made by Ms.

---

[3] Plaintiffs also argue that the affidavit of merit statute is "facially unconstitutional" because it imposes excessive cost on litigants defendants. This argument is without merit. *See Porter v. Dept. of Treasury*, 564 F.3d 176, 180 (3d Cir. 2009) (litigants who are granted *in forma pauperis* status must bear the costs of expert witness fees)

7

Cortes was not recorded. He further emphasizes that at a probable cause hearing, Ms. Cortes (arguably) testified that the identification never took place. However, even if the Court were to disregard the photo identification, it would not change the fact that Justin Evans informed the Englewood Detectives that Tyrone was one of his accomplices in the October 31 Incident.[4] *See, e.g., Green v. City of Paterson*, 971 F.Supp. 891, 907 (D.N.J. 1997) (citing *United States v. Harris*, 956 F.2d 177, 180 (8th Cir. 1992)). Moreover, the record shows that a grand jury indicted Tyrone on some of the charges for which he was arrested. Under Third Circuit precedent, the indictment provides an independent basis for concluding that the Englewood Detectives had probable cause to arrest Tyrone. *See, e.g., Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (grand jury indictment "establishes probable cause by definition").

For the same reasons, the Englewood Detectives are entitled to summary judgment on Tyrone's malicious prosecution claims. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (malicious prosecution claim requires showing that defendants acted maliciously and for reasons other than bringing plaintiff to justice). Moreover, the above analysis requires that the Court also enter judgment in favor of the Englewood Detectives on Tyrone's false imprisonment claim. *Groman*, 47 F.3d at 636 (an arrest without probable cause cannot be the source of a false imprisonment claim) (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979)).

Tyrone also brings a claim for "false evidence" under Section 1983. This claim arises out of Plaintiffs' allegation that Detective Kinlaw lied in his police report by falsely claiming that Tyrone made incriminating comments to Jaquan Graham while in a holding cell. This claim fails for two primary reasons. First, aside from his own self-serving claim that he never made incriminating statements to Graham, Tyrone has not offered a shred of evidence undermining the credibility of the Kinlaw Report. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009). Second, even if Tyrone did offer such evidence, "[i]t is well settled that police officers are absolutely immune from § 1983 suits for damages for giving allegedly perjured testimony…" *Blacknall v. Citarella*, 168 Fed.Appx. 489, 492 (3d Cir. 2006) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)). Therefore, the Englewood Detectives are entitled to summary judgment on Tyrone's false evidence claim. Moreover, the Englewood Detectives are entitled to summary judgment on Tyrone's conspiracy claim because without an actual deprivation, there can no liability for conspiracy under Section 1983. *See Holt Cargo Sys. V. De. River Port Auth.*, 20

---

[4] Tyrone argues that the identification did not establish probable cause because Evans made it only after police misleadingly told him that Tyrone implicated him in the October 31 Incident. However, the Supreme Court has held that "[p]loys to mislead a suspect or lull him into a false sense of security" do not raise constitutional concerns so long as they do not rise to the level of coercion. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Because there is nothing on the record indicating that the Englewood Detectives coerced Evans into identifying Tyrone, Evans' identification was sufficient to establish probable cause for Tyrone's arrest.

F.Supp.2d 803,843 (E.D.Pa. 1998) (citing *Andree v. Ashland County*, 818 F.2d 1306, 1308 (7th Cir. 1987).

   B.  State Law Claims: Intentional Infliction of Emotional Distress, Negligence, N.J.S.A. 10:6-1

The Englewood Detectives are also entitled to summary judgment on Plaintiffs' state law claims. With respect to Tyrone's New Jersey Civil Rights Act ("NJCRA") claim, judges in this district have repeatedly interpreted the NJCRA analogously to Section 1983. *See, e.g., Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888*, *3 (D.N.J. August 25, 2009). Moreover, the provisions of the New Jersey Constitution that are relevant to this case do not afford more protection than their federal counterparts. *See Sebastian v. Vorhees Tp.*, No. 08—6097, 2011 WL 540301, *7 n.11 (D.N.J. Feb. 8, 2011) (citing *Desilets on behalf of Desilets v. Clearview Regional Bd. of Educ.*, 627 A.2d 667, 673 (N.J. Super. Ct. App. Div. 1993). Having found that the Englewood Detectives did not violate Section 1983, it therefore follows that those individuals did not violate the NJCRA.

The Englewood Detectives are also entitled to summary judgment on Tyrone's Intentional Infliction of Emotional Distress ("IIED") claim. To make out a claim for IIED, a plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Tarr v. Ciasulli*, 181 N.J. 70, 77 (2004) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988)). Conduct will be deemed "outrageous" for the purposes of a Section 1983 claim only where it is "'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 365-67 (1988) (quoting *Restatement (Second) of Torts* § 46 cmt. d). Even construing the evidence in a light most favorable to Plaintiffs, nothing on the record indicates that the Englewood Detectives committed outrageous conduct. At the very least, the Englewood Detectives received a statement from a suspect implicating Tyrone as the architect of the October 31 Incident. Moreover, Tyrone has produced no evidence refuting the fact that the Englewood Detectives received inconsistent statements regarding Tyrone's whereabouts during the relevant time period.[5] Therefore, the Englewood Detectives did not commit outrageous conduct, and they are entitled to summary judgment on Tyrone's IIED claim.

Similarly, there is no evidence supporting Tyrone's negligence and defamation claims. To make out a negligence claim, a plaintiff must prove the following four elements: (1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3)

---

[5] Similarly, with the exception of self-serving denials made by Tyrone himself, Plaintiffs have not put forth a scintilla of evidence casting doubt on the legitimacy of the Kinlaw Report, which stated that Tyrone made incriminating statements to another suspect.

9

proximate cause, and (4) actual damages. *Brunson v. Affinity Fed. Cred. Union*, 199 N.J. 381, 400 (2009). To make out a defamation claim, a plaintiff must prove the following three elements: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence." *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004). Tyrone has not presented any evidence indicating that the Englewood Detectives acted negligently. Based on witness statements, the Englewood Detectives reasonably identified Tyrone as a suspect in the October 31 Incident and decided to charge him. The fact that the BCPO ultimately dropped its case against Tyrone does not change that result.

## V.   CLAIMS AGAINST THE CITY OF ENGLEWOOD AND THE ENGLEWOOD POLICE DEPARTMENT

As explained in the foregoing section, the Englewood Detectives are entitled to summary judgment on all claims against them. For the reasons stated below, the same goes for the City of Englewood and the Englewood Police Department. It is well settled that "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* … liability." *Phillips ex rel. Estate of Phillips v. Northwest Regional Communications*, 391 Fed. Appx. 160, 168 n. 7 (3d Cir. 2010) (citing *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). In light of that rule, the City of Englewood and the Englewood Police Department are also entitled to summary judgment on Plaintiffs' Section 1983 claims, including the claim for "[f]ailure to [i]mplement [a]ppropriate [p]olicies, [c]ustoms, and [p]ractices." For the same reason, those Defendants are entitled to summary judgment on Plaintiffs' state law claims. *See, e.g., Hart v. City of Jersey City*, 308 N.J. Super. 487, 493 (N.J. Super. Ct. App. Div. 1998) (police department cannot be liable on *respondeat superior* theory where individual police officers were not liable).

## VI.   CONCLUSION

For the foregoing reasons, all three motions for summary judgment are **GRANTED**. An appropriate order accompanies this decision.

　　　　　　　　　　　　　　　　　　　　　/s/ William J. Martini
　　　　　　　　　　　　　　　　　　　**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 3, 2015**